108 F.3d 1384
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Maria Berta CORTEZ, Petitioner,
v.
IMMIGRATION AND NATURALIZATION SERVICE, Respondent.
 No. 95-70757.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Feb. 3, 1997.
Decided March 14, 1997.
 
 1
 Before: D.W. NELSON and TROTT, Circuit Judges, and ROBERT J. BRYAN,* District Judge.
 
 
 2
 MEMORANDUM**
 
 
 3
 Maria Berta Cortez, a native and citizen of El Salvador, appeals a decision of the Board of Immigration Appeals ("BIA") denying her request for asylum and her application for withholding of deportation under 8 U.S.C. §§ 1158(a) and 1253(h). The BIA concluded that: 1) Cortez is not statutorily eligible for asylum because she lacks a well-founded fear of future persecution and because she did not suffer past persecution on account of her political opinion; and 2) even if Cortez were eligible for asylum, it would deny her request as a matter of discretion.
 
 
 4
 Although the BIA erred in concluding that Cortez was not eligible for asylum, the BIA did not abuse its discretion in denying her application as a matter of discretion. Thus, we affirm the BIA's decision and deny the petition for review.
 
 I. Eligibility for Asylum
 
 5
 Under the Immigration and Nationality Act, an immigrant is eligible for asylum if she is unwilling to return to her native country because of past persecution or a well-founded fear of future persecution on account of political opinion. See 8 U.S.C. §§ 1158(a), 1101(a)(42)(A). We review the BIA's determination that Cortez is not eligible for asylum for substantial evidence. Rodriguez-Matamoros v. INS, 86 F.3d 158, 160 (9th Cir.1996).
 
 
 6
 Substantial evidence supports the BIA's conclusion that Cortez lacked a well-founded fear of future persecution. Relying on a State Department report about conditions in El Salvador, the BIA reasoned that conditions have improved to such an extent that Cortez no longer possesses an objectively reasonable fear of future persecution. The BIA's conclusion is well-supported by the State Department report, which found that recent presidential elections have brought an end to the civil war and that recent peace accords have resulted in demobilization of the guerrilla forces and reductions of military troops. In light of this evidence, the BIA did not err in finding that Cortez lacked an objectively reasonable fear of future persecution.
 
 
 7
 The BIA did err, however, in finding that Cortez did not suffer past persecution on account of political opinion. Evidence in the record overwhelmingly indicates that when military officials tied up and beat Cortez on several occasions, they did so because she had aided the guerrillas and because they believed she was a guerrilla-supporter. Indeed, the BIA opinion acknowledged that the military abused Cortez "due to her perceived collaboration" with the guerrillas. It is the well-settled law of this circuit that a petitioner can show persecution on account of political opinion when the persecutor acted in response to political opinions imputed to the petitioner, whether or not that imputation was accurate. Lopez-Galarza v. INS, 99 F.3d 954, 959 (9th Cir.1996).
 
 
 8
 In addition, there is abundant evidence that the guerillas also persecuted Cortez because of her political opinion. When the guerrillas beat Cortez in an effort to force her to comply with their requests for medical attention, she specifically referred to her political neutrality as the reason for her resistance: "The only thing that I could tell them was that I ... wasn't supporting the government because I was neutral." (Emphasis added). The BIA itself acknowledged that Cortez "did not offer to assist the FMLN guerrillas but told them concerning her political opinion that she was neutral." "Under the case law of the Ninth Circuit, political neutrality constitutes political opinion for purposes of asylum." Ramos-Vasquez v. INS, 57 F.3d 857, 863 (9th Cir.1995).
 
 
 9
 The only reasonable interpretation of the evidence in the record is that when the military and the guerrillas beat Cortez, they did so on account of her political opinion. Thus, the BIA erred in concluding that Cortez was not eligible for asylum.
 
 II. Asylum As a Matter of Discretion
 
 10
 The BIA held that, even if Cortez were eligible, it would deny her request for asylum as a matter of discretion. We review the BIA's determination of whether an applicant is entitled to asylum for abuse of discretion. Lopez-Galarza, 99 F.3d at 960. The BIA abuses its discretion if its decision is arbitrary, irrational, or contrary to law. Id.
 
 
 11
 "In determining whether to grant asylum as a discretionary matter, the likelihood of future persecution is a particularly important factor to consider." Rodriguez-Matamoros, 86 F.3d at 160-61 (quoting Kazlauskas v. INS, 46 F.3d 902, 905 (9th Cir.1995)). As discussed above, the BIA explicitly found that Cortez was unlikely to suffer from future persecution because conditions had substantially improved in El Salvador. This finding is well supported by substantial evidence. In a concurring opinion, Board member Holmes carefully looked at the evidence regarding whether the military or the guerrillas were still looking for Cortez after the end of the war, and he found nothing to so indicate.
 
 
 12
 Even in cases where there is little likelihood of future persecution, however, the favorable exercise of discretion may be warranted for humanitarian reasons. See Lopez-Galarza, 99 F.3d at 960; Rodriguez-Matamoros, 86 F.3d at 161; Matter of Chen, Int.Dec. 3104 at 3 (BIA1989). We have held that, in order to properly exercise its discretion, the BIA must conduct an inquiry into whether the petitioner "has suffered under atrocious forms of past persecution." Lopez-Galarza, 99 F.3d at 961. The BIA must gauge the severity of the petitioner's experience. Id. at 963.
 
 
 13
 In this case, the BIA explained that "[Cortez] has not established that any mistreatment of her was so severe as to merit [a humanitarian] grant of asylum to her." (emphasis added). Thus, unlike in Lopez-Galarza, the record shows that the BIA did not only noted the minimal threat of future persecution but also evaluated the severity of Cortez's mistreatment. The BIA's explanation is "sufficient to enable us as a reviewing court to see that the Board has heard, considered, and decided." Rodriguez-Matamoros, 86 F.3d at 161. Therefore, the BIA did not abuse its discretion in denying Cortez asylum as a matter of discretion.
 
 III. Withholding of Deportation
 
 14
 Because the BIA did not err in determining that Cortez failed to establish a well-founded fear of future persecution, it follows that Cortez has failed to meet the more stringent test for withholding of deportation. Kazlauskas, 46 F.3d at 907
 
 CONCLUSION
 
 15
 The BIA erred in concluding that Cortez is statutorily ineligible for asylum. However, the BIA did not abuse its discretion in denying Cortez asylum as a matter of discretion. The BIA explained that, in light of the changed conditions in El Salvador and the absence of compelling humanitarian concerns, asylum was not warranted. The BIA considered all the relevant factors in making its determination, and it adequately explained its reasons for denying discretionary relief. We AFFIRM the decision of the BIA and DENY the petition for review.
 
 
 16
 D.W. NELSON, Circuit Judge, concurring in part and dissenting in part:
 
 
 17
 Because I think that Lopez-Galarza v. INS, 99 F.3d 954 (9th Cir.1996), and Rodriguez-Matamoros v. INS, 86 F.3d 158 (9th Cir.1996), cannot be squared with the majority's conclusion that the BIA adequately addressed the possible humanitarian grounds for granting asylum to Cortez, I must dissent from Part II of the disposition. Otherwise, I concur.
 
 
 18
 Before denying asylum to an applicant who has suffered past persecution, the BIA must do more than make a summary determination that a humanitarian grant of asylum is not warranted. Lopez-Galarza, 99 F.3d at 961-62; Rodriguez-Matamoros, 86 F.3d at 161. The majority concludes that the BIA met its burden in this case by stating that Cortez "has not established that any mistreatment of her was so severe as to merit [a humanitarian] grant of asylum to her." Yet we have held that in conducting the humanitarian inquiry, the BIA must assess the atrocity of the abuse suffered by the applicant and must articulate the reasons why the persecution at issue does not rise to a level that warrants a humanitarian grant of asylum. Lopez-Galarza, 99 F.3d at 962.
 
 
 19
 In Lopez-Galarza, we reviewed the BIA's determination that it would not be inhumane to require Lopez-Galarza to return to Nicaragua, even though the Nicaraguan Sandinista rebels had raped and beaten her. Id. By stating that a humanitarian grant of asylum was not warranted and by citing to a string of federal cases assessing the atrocity of past persecution, the BIA drew a cursory comparison between Lopez-Galarza's suffering and that of other applicants denied asylum on humanitarian grounds. Id. at 961-62 & n. 8. Nonetheless, we concluded that such a summary assessment was an abuse of discretion because the BIA "made no attempt to articulate why Lopez-Galarza's persecution was less 'atrocious' than that of" others whose humanitarian claims to asylum had been granted. Id. at 962 (emphasis added).
 
 
 20
 Indeed, in Lopez-Galarza, the BIA conducted a more specific inquiry into the nature of the abuse the asylum applicant had endured than the BIA did in this case. The BIA emphasized in Lopez-Galarza, " '[W]e do not minimize the brutality of her treatment in prison, or the trauma resulting from her rape.' " Id. (quoting BIA opinion). Nonetheless, we held that the BIA did not evaluate Lopez-Galarza's abuse in sufficient detail. Id.
 
 
 21
 In Rodriguez-Matamoros, we drew a similar conclusion. The BIA cited to a case in which asylum had been granted on humanitarian grounds and noted that " 'even if past persecution had been established ... we would not conclude from our independent review of the record that there are humanitarian or compelling bases that presently warrant a grant of asylum.' " Rodriguez-Matamoros, 86 F.3d at 161 (quoting BIA opinion). We determined that the BIA abused its discretion because "we have no idea what factors the BIA considered or relied upon." Id.
 
 
 22
 Here, the only reason the BIA gave for concluding that Cortez failed to suffer atrocious persecution was an impermissible one. The majority neglects to quote a key phrase which follows the BIA's statement that Cortez' suffering was not severe: After drawing this conclusion, the BIA added that it had done so "particularly in light of the recent political changes in El Salvador as established by the documentation presented."
 
 
 23
 The omitted phrase indicates that the BIA relied on "essentially the same facts it relied on in finding no likelihood of future persecution," which we have said is improper. Lopez-Galarza, 99 F.3d at 962 (noting that facts relied upon by BIA to conclude that there was no likelihood of future persecution "simply are not relevant to the 'atrocity' " of petitioner's past persecution). Rather than explaining the factors it assessed in reviewing Cortez' petition, the BIA referred to irrelevant evidence of improved human rights conditions in El Salvador. See id. Because it did not articulate the factors it considered in assessing the degree of Cortez' suffering, the BIA has not provided us with a "decision that sets out terms sufficient to enable" us to see "that the Board has heard, considered, and decided." Rodriguez-Matamoros, 86 F.3d at 160 (internal quotations and citations omitted).
 
 
 24
 The majority agrees that both the El Salvadoran military and rebel forces tortured Cortez on multiple occasions. Because the BIA failed to explain why this abuse was not severe enough to merit a humanitarian grant of asylum, except to refer to irrelevant evidence of improved conditions in El Salvador, I respectfully dissent.
 
 
 
 *
 The Honorable Robert J. Bryan, United States District Judge for the Western District of Washington, sitting by designation
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3